UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 2:23-CR-37-PPS-JEM |
| ) | |
| OWEN HERRIOTT, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

On May 17, 2023, a 5-count indictment was returned against Defendant, Owen Herriott, charging him with knowingly possessing a machinegun not registered to him in the National Firearms Registration and Transfer record, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. [DE 11.] According to the government, the ATF set up several controlled buys with Herriott, and acquired eight Glock conversion devices from Herriott. [DE 30 at 1.] The government tells me that the Glock conversion devices meet the definition of "any part designed and intended solely and exclusively, or combination of parts designed and intended for use in converting a weapon into a machine gun" under 26 U.S.C. § 5845(b), thus making the conversion devices "firearms" under 18 U.S.C. § 5845(a)(6). [*Id.* at 2.] These types of "firearms" must be registered, and the failure to do so may be prosecuted criminally. *Id.*

This case was originally set for trial July 24, 2023. [DE 15.] Herriott filed three motions to continue—all were granted. [DE 18, 20, 23.] A final pretrial conference in this case was set for March 15, 2024, and trial for April 1, 2024. [DE 25.] Given the timing, I

was surprised to see that just *two days* before the final pretrial conference, Herriott filed a motion to dismiss all of the charges in the indictment. In the motion, he argues the Second Amendment to the United States Constitution, as recently construed by the Supreme Court in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), protects his right to possess a firearm (and conversion device which effectively turned a firearm into a machinegun) and the statutes are unconstitutional as applied to his case. [DE 27.] In a nutshell, he argues the government "cannot demonstrate that Mr. Herriott's criminal prosecution for mere possession of the firearms at issue, while said firearms are not registered to him, is consistent with the national historical tradition of firearm regulation as understood from the time of the founding." [DE 27 at 3.]

## Background and Timing of the Motion

First of all, as I expressed at the hearing in this matter, the timing of the motion to dismiss is improper and reason enough to deny it. Herriott's counsel told me at the hearing that she filed this motion just before the scheduled pretrial conference for strategic reasons—to keep her client out of jail for as long as possible. She also admitted she could have filed this motion, which is based upon a legal issue and is not factually dependent on any discovery, much earlier in this case. However, counsel insisted that it was entirely proper to file the motion at this late hour, arguing the arraignment order and subsequent orders on the motion to continue provided that *all* motions (including motions to dismiss), could be filed up to the final pretrial conference date. That position is flatly incorrect and is based on a tortured reading of the prior orders in this case.

First of all, the arraignment order issued on May 17, 2023, states explicitly that all pretrial motions filed under Federal Rule of Criminal Procedure 12(b) were due "within 28 days following the date of arraignment." [DE 15 at 2.] This included any "motion to dismiss the indictment . . ." *Id.* Nevertheless, nearly a year went by before the present motion to dismiss was filed. At the hearing, I asked counsel why she waited so long to file the motion. Aside from the "strategic" reasons noted above, she dug in telling me that orders of the court authorized it. The orders she was referring to were those issued by the magistrate judge in response to motions to continue the trial and they state that trial counsel are ordered "to submit all *pretrial filings*, including but not limited to proposed voir dire, jury instructions, and motions in limine, on or before the Final Pretrial Conference." [DE 19 at 2; DE 21 at 2; DE 25 at 2.] (emphasis added).

Counsel evidently believes that these continuance orders somehow reset the clock on the filing of motions to dismiss. They did no such thing. And no fair reading of them could suggest otherwise. I do not consider a motion to dismiss the indictment a "pretrial filing" in the sense that it is used in the orders granting the motions to continue. One look at the list of examples laid out in the orders proves the point—jury instructions, proposed voir, motions in limine. These are obviously all "pretrial filings" that are *trial related*. Those were the categories of motions whose deadlines were reset by the motion to continue. Counsel's obtuse reading of the orders doesn't change that. Her motion is untimely.

3

Setting aside the untimeliness for a moment, I also find the motion fails substantively. As described more fully below, I do not believe Herriott's constitutional rights are being violated, and the National Firearms Act statutes remain constitutional after *Bruen* (and after *Rahimi* as well).[1] This is because the Second Amendment does not protect machineguns and other unusual weapons (silencers, short barreled rifles, sawed off shotguns and the like) that are not typically possessed by law-abiding citizens. As such, because the statutes being challenged here do not implicate Herriott's Second Amendment rights, the motion to dismiss is DENIED.

## Discussion

Herriott is charged under 26 U.S.C. § 5861(d), which makes it unlawful for a person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d). The term "firearm" is defined in the Act to include machineguns. A defendant can move before trial to dismiss an indictment for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B). Such a motion can be made on the basis that the charged offense is based on an unconstitutional statute. That is the basis upon which Herriott seeks dismissal of the indictment in this case—he basically believes the statutes place prohibitions on firearms possession, and thus violate the Second Amendment.

---

[1] While this opinion was in draft, the Supreme Court issued its ruling in *United States v. Rahimi*, 602 U.S. \_\_, No. 22-915, 2024 WL 3074728 (June 21, 2024). Nothing in *Rahimi* changes the analysis herein. If anything, *Rahimi* can be seen as a softening of the approach to the Second Amendment taken in *Bruen.* How else does one explain that the author of *Bruen* is the sole dissenter in *Rahimi*?

A constitutional challenge to a statute can be brought either as a facial challenge or an as-applied challenge. Herriott brings both types of challenges against the statutes at issue here—26 U.S.C. §§ 5841, 5861(d), and 5871. To succeed on a facial challenge to the constitutionality of a statute, the moving party must show that the statute is unconstitutional in all applications. *City of Los Angeles. v. Patel*, 576 U.S. 409, 415, 418 (2015). To succeed on an as-applied challenge, the moving party must show it is unconstitutional because of the way it was applied to the particular facts of their case. *See United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011). What this means is that if a statute is constitutional as applied to the defendant, then any facial challenge to the statute must necessarily fail as well. *United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."); s*ee also Rahimi*, 2024 WL 3074728, at *6.

The Second Amendment states: "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II. In *District of Columbia v. Heller*, the Supreme Court identified the "core" of the Second Amendment as: "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). The Court made clear, though, that "the right secured by the Second Amendment is not unlimited." *Id.* at 626. A few years later, a plurality of the Court in *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010), repeated its assurances that

5

*Heller* "did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms . . . ."

That led us to *Bruen* which involved a New York law making it a crime to possess a firearm without a license, both inside and outside the home. A person could obtain a license for a firearm, but they had to demonstrate a specific need for self-defense. *Bruen*, 597 U.S. 1. The Court held the Second Amendment protects an individual's right to carry a handgun for self-defense both in the home and outside of the home, and that New York's licensing plan violated the Constitution. *Id*. When evaluating whether a regulation on Second Amendment rights is constitutional, *Bruen* instructs the courts to use the following standard:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'

*Id.* at 17.

It is important to note that the majority opinion in *Bruen* did not address the "longstanding prohibitions on the possession of firearms by felons . . . or laws imposing conditions and qualifications on the commercial sale of arms" that the Court previously called "presumptively lawful regulatory measures." *Heller*, 554 U.S. at 626, 627 n.26. Indeed, the Supreme Court reiterated the same point just a few days ago. *Rahimi,* 2024 WL 3074728 at *10. What this means is that the Supreme Court has never held that

6

regulations requiring registration of firearms infringe upon Second Amendment activity. In fact, *Heller*, *Bruen* and *Rahimi* all strongly suggest otherwise. Likewise, no federal appeals court (as far as I know) has ever found the operative statutes at issue in this case unconstitutional, whether it be before or after *Bruen* was announced. *See, e.g., United States v. England*, No. 5:23-cr-93, 2024 WL 2194476, at *6 (S.D. W.V. May 14, 2024) (citing cases from around the country finding even after *Bruen*, section 5861(d) does not offend the Second Amendment).

As it relates specifically to firearms like machineguns, the Supreme Court previously stated that "[i]t is of course clear from the face of the Act that the NFA's object was to regulate certain weapons likely to be used for criminal purposes . . . ." *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 517 (1992). *Heller* echoed that precise point when it noted that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes . . . ." *Heller*, 554 U.S. at 625. *Bruen* drove it home when it quoted *Heller* in saying that "like most rights, the right secured by the Second Amendment is not unlimited." *Bruen*, 597 U.S. at 21 (quoting *Heller*, 554 U.S. at 626).

In sum, *Heller* forecloses any challenge to the federal machinegun registration/ban. We know this because that's precisely what *Heller* said: the Second Amendment simply does not extend to "dangerous and unusual weapons" like "short-barreled rifles." *Heller*, 554 U.S. at 627. This is not a novel point. The Supreme Court held as much nearly a century ago in *United States v. Miller*, 307 U.S. 174, 182 (1939).

7

Surely, the same rationale that allows the regulation of short-barreled shotguns applies with equal force to the machineguns that Herriott is alleged to have been selling.

I therefore agree with my colleague Judge Miller when he held that "weapons regulated under § 5861 are outside the Second Amendment's scope" and whatever changes *Bruen* may have "brought to the Second Amendment landscape, inclusion of dangerous and unusual weapons in the Second Amendment right isn't one such change." *United States v. Sredl*, No. 3:22-CR-71-RLM-MGG, 2023 WL 3597715, at *3 (N.D. Ind. May 23, 2023). Many other courts have wisely arrived at the same conclusion. *See, e.g., United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No. LW001804*, 822 F.3d 136, 142 (3d Cir. 2016) ("[T]he Second Amendment does not protect the possession of machine guns. They are not in common use for lawful purposes."); *United States v. Simien*, 655 F. Supp. 3d 540, 546 (W.D. Tex. 2023) (finding that certain weapons identified in the NFA are within the category of "dangerous and unusual" weapons that do not receive Second Amendment protection); *United States v. Holton*, 639 F. Supp. 3d 704, 709-10 (N.D. Tex. 2022) (holding that § 5861(d) does not regulate protected conduct under the Second Amendment); *United States v. Hoover*, 635 F. Supp. 3d 1305, 1325 (M.D. Fla. 2022) (finding nothing in *Bruen* that "would undermine" the line of authority holding that the Second Amendment does not protect machineguns); *United States v. Woznichak*, No. 21-242, 2023 WL 7324442, at *8-*9 (W.D. Pa. Nov. 7, 2023) (finding § 5861(d) does not infringe on conduct protected by the Second Amendment).

Finally, it's worth pointing out that neither *Bruen* nor *Rahimi* even so much as mention a case decided by the Supreme Court well after *Heller* which concerns federal firearms regulations: *Abramski v. United States*, 573 U.S. 169 (2014). *Abramski* dealt with a different regulatory statute, 18 U.S.C. § 922(a)(6). The Court in *Abramski* started its analysis by talking about how "[f]ederal law has for over 40 years regulated sales by licensed firearms dealers, principally to prevent guns from falling into the wrong hands." *Id.* at 172. The court then went on to talk about how the firearms "statute establishes a detailed scheme" to regulate a number of things such as the "buyers name, age and place of residence." *Id.* (internal quotations omitted). *Abramski* addressed these commonsense regulations without even mentioning the Second Amendment. *Bruen* doesn't even cite to *Abramski*. Yet Herriott would have me believe that somehow *Bruen* intended to upend the entire "detailed scheme" of federal firearms regulations without saying so. If that's what *Bruen* (and now *Rahimi*) actually mean, I'll let someone else arrive at that conclusion.[2]

One last point: I am cognizant of the recent decision by the Supreme Court of the United States, *Garland v. Cargill*, 602 U.S. __, No. 22-976, 2024 WL 2981505 (June 14, 2024). However, in *Cargill*, the Court dealt with an entirely different issue and held the ATF exceeded its statutory authority by issuing a Rule that classifies a bump stock as a

---

[2] In that regard, I am fully aware that a similar issue is in front of the Seventh Circuit as we speak in *United States v. Rush*, Appeal No. 23-3256 (7th Cir. 2023), and if the Seventh Circuit finds these statutes unconstitutional, I will be forced to reevaluate my stance here. We can cross that bridge when (and if) we get there.

"machinegun" under 26 U.S.C. § 5845(b). The Court spent a significant amount of time analyzing the inner workings of a semiautomatic rifle equipped with a bump stock, and the majority concluded it is not a "machinegun" as that term is defined by statute because it does not fire more than one shot "by a single function of the trigger." [*Id.* at *8.] *Bruen* was not even cited in *Cargill*. And for good reason: it's really not a case about *what* guns can be regulated, but *who* does the regulating—Congress through legislation or the President by fiat (through regulation). In short, unless the devices that Herriott is alleged to have been peddling were bump stocks—and no argument along those lines has been made to me—*Cargill* has no bearing on this case.

**ACCORDINGLY:**

For the foregoing reasons, Defendant Owen Herriott's Motion to Dismiss [DE 27] is **DENIED**. The parties are reminded that this case is set for a final pretrial conference on July 9, 2024, and trial on July 22, 2024.

**SO ORDERED**.

ENTERED: June 24, 2024

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT